UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CODY MOODY,<br><br>        Plaintiff,<br>  v.<br><br>OFFICER EUGENE DUPREY (#1P77), as agent and in his individual capacity, OFFICER JAMES ESSLINGER, as agent and in his individual capacity, and THURSTON COUNTY, WASHINGTON,<br><br>        Defendants. | CASE NO. 17-6081 RJB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

  THIS MATTER comes before the Court the Defendants' Motion for Summary Judgment. Dkt. 22. The Court has reviewed the pleadings filed regarding the motion and the remaining file.

  On December 29, 2018, Plaintiff filed this civil rights case, alleging that the Defendant Thurston County police officers violated his fourth amendment right to be free from the use of excessive force when they arrested him. Dkt. 1. Plaintiff also makes a fourth amendment claim against Thurston County, Washington for failure to train and failure to supervise the officers. *Id.* He seeks damages, attorneys' fees and costs. *Id.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

On September 4, 2018, Plaintiff's counsels' motions to withdraw were granted, as was the Plaintiff's motion for a six month extension on all deadlines. Dkt. 18. The deadline to file a motion for summary judgment was extended to February 19, 2019. Dkt. 19. No other lawyers have appeared for Plaintiff; he is proceeding *pro se*.

On January 4, 2019, the Defendants timely filed the instant motion for summary judgment (Dkt. 22) and filed a notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir 1998) regarding motions for summary judgment (Dkt. 26). The Plaintiff did not respond to the motion for summary judgment. For the reasons provided, the motion for summary judgment (Dkt. 22) should be granted.

## I. FACTS

On December 31, 2014 to January 1, 2015 (until about 2:30 a.m.) the Plaintiff consumed an unknown quantity of beer and tequila, while at a house party at Hemphill Drive SE, Olympia, Washington. Dkt. 23, at 7. Around 3:30 a.m. on January 1, 2015, Defendants Thurston County Sheriff's Deputies James Esslinger and Eugene Duprey were dispatched to a home near the house party on a complaint that a drunk and disorderly person (who we now know was the Plaintiff) was trying to force his way into a home. Dkts. 24, at 1 and 25, at 1. The homeowner reported that he did not know the Plaintiff and he asserted that the Plaintiff was attempting to provoke a fight. *Id*. The homeowner told the deputies that the Plaintiff was able to get the doorknob lock open, but the door was also dead-bolted, preventing the Plaintiff's entry. Dkt. 25, at 3. The homeowner tried to get the Plaintiff to leave several times, but finally called the police. *Id.*

Deputy Duprey was the first to arrive on the scene. Dkt. 25, at 2. According to Deputy Duprey, the Plaintiff was yelling, acting erratically, and even after Deputy Duprey identified

himself as a law enforcement officer, the Plaintiff continued to scream. *Id.* The Plaintiff refused to comply with verbal commands and kept concealing his right hand. *Id.*

The Plaintiff was in the carport of the residence when the Deputy Esslinger made contact with him. Dkts. 24, at 2. The Plaintiff was, at times, uncooperative, and had significant mood swings – he was passive at some points and aggressive at others; making threats to "kill" the deputies. Dkts. 24, at 2 and 25, at 2. He finally sat down and put his hands out in front of himself. *Id.* A search of his right pocket revealed a pocket knife. Dkt. 25, at 2.

He was placed under arrest for attempted residential burglary. Dkt. 25, at 3. Due to his behavior, he was placed in handcuffs and leg restraints. Dkts. 24, at 2 and 25 at 3. According to the deputies, the Plaintiff did not complain of any pain and neither deputy observed an injury on the Plaintiff. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. SECTION 1983 AND QUALIFIED IMMUNITY GENERALLY**

In order to maintain a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). To state a civil rights claim, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable.

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

Individual defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow,* at 815. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, a court must determine: (1) whether a constitutional right has been violated considering the facts in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). A court has discretion to consider the second *Saucier* factor first, "whether the right was clearly established." *Pearson,* at 236. The plaintiff bears the burden of proving that the particular federal right was violated and was clearly established at the time. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

A county or municipality is responsible for a constitutional violation only when an action taken pursuant to a county or municipal policy of some nature caused the violation. *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A claim against a county official in their official capacity is "no different" than a claim against the county. *See Will v. Dept. of State Police,* 491 U.S. 58, 71 (1989).

### C. CLAIM FOR VIOLATION OF THE FOURTH AMENDMENT AGAINST THE INDIVIDUAL OFFICERS

The Fourth Amendment to the United States Constitution protects people against "unreasonable searches and seizures." "[D]etermining whether the use of force to effect a seizure was unreasonable under the Fourth Amendment—and therefore unlawful—requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017)(*internal citations omitted*).

The Defendants' motion for summary judgment (Dkt. 22) should be granted and the fourth amendment claims asserted against the individual officers should be dismissed. There is no showing that the force used here was not reasonable. The nature and intrusion on the Plaintiff's rights were relatively minimal. There is no showing to the contrary. Further, the government's interests in using some force were significant. The Plaintiff had been accused of attempting to break into someone's home, was armed with a knife, was not compliant, was acting erratically, and threatening the officers. On balance, the use of force here was reasonable – the "nature and quality of the intrusion" on the Plaintiff's Fourth Amendment interests was minimal and considering the totality of the circumstances, the countervailing governmental interests at stake outweighed his individual interests. *Isayeva,* at 946-47. No violation of the Plaintiff's fourth amendment rights occurred. The claims asserted against the individual officers should be dismissed.

### D. CLAIM FOR VIOLATION OF THE FOURTH AMENDMENT AGAINST THE COUNTY

The Plaintiff's Fourth Amendment rights were not violated – that the force used was not excessive in the circumstances. Where a Court determines that excessive force was not used and dismissed the claim against individual officers, county liability for the alleged unconstitutional use of such force is precluded. *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002). The Plaintiff's claims against Thurston County should also be dismissed.

### III. ORDER

It is **ORDERED** that:

- The Defendants' Motion for Summary Judgment (Dkt. 22) **IS GRANTED**; and

- This case **IS DISMISSED**.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record, to Mr. Moody, and to any party appearing *pro se* at said party's last known address.

Dated this 5th day of February, 2019.

ROBERT J. BRYAN
United States District Judge